# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

ELENA BARRON,

          Plaintiff,

    v.

ALASKA NATIVE TRIBAL HEALTH
CONSORTIUM,

          Defendant.

Case No. 3:18-cv-00118-SLG

## ORDER RE MOTION TO DISMISS

Before the Court at Docket 9 is Defendant Alaska Native Tribal Health Consortium's ("ANTHC") Motion to Dismiss. Plaintiff Elena Barron opposed at Docket 12. ANTHC replied at Docket 13. Oral argument was not requested and was not necessary to the Court's decision.

## BACKGROUND

ANTHC is a tribal organization that provides health care services to Alaska Natives, American Indians, and other eligible individuals pursuant to Titles I and V of the Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 5321–32, 5381–99; the Alaska Tribal Health Compact; and a Funding Agreement with the Secretary of Health and Human Services.[1] Ms. Barron is a respiratory therapist formerly employed by ANTHC.[2] Ms. Barron's Complaint alleges as follows:

---

[1] Docket 11-1 at 2; Docket 11-2 at 7, 16–17. Titles I and V of the Indian Self-Determination and Education Assistance Act were originally codified at 25 U.S.C. §§ 450f–450n and 25 U.S.C. §§ 458aaa–458aaa-18.

[2] Docket 1-1 (State Court Complaint) at 2, 6, ¶¶ 2.1, 2.20.

Ms. Barron began her employment with ANTHC in November 2016.[3] Shortly after beginning work, Ms. Barron heard other employees discussing "HR hires" in a manner that "cast HR hires in a negative light."[4] Ms. Barron later asked department director Craig Bevercomb if she was considered a "HR hire," and he replied that she was.[5] Ms. Barron alleges that over the course of the next several weeks, Ms. Barron's supervisor Zachary Malbalay treated Ms. Barron — who is a Native Alaskan — differently than her Caucasian coworkers.[6] Mr. Malbalay required Ms. Barron to conduct a procedure that a Caucasian coworker was not required to conduct; he also excused a Caucasian employer from an assignment in Pediatrics because the coworker was pregnant, and instead gave the assignment to Ms. Barron — who was also pregnant at the time.[7]

On Friday, December 9, Mr. Malbalay approached Ms. Barron and told her that Mr. Bevercomb had asked him to talk to her. Mr. Malbalay told Ms. Barron that she was in a "unique position" because she was "more likely to have relatives come to [the] hospital because she was Native-Alaskan."[8] He then "suggested that because [Ms. Barron] was Native-Alaskan she needed to find other employment with one of the other hospitals in Anchorage."[9] Mr. Malbalay told Ms. Barron that she must decide over the weekend to

---

[3] Docket 1-1 at 2, ¶ 2.1. Ms. Barron's Complaint alleges that she began working for ANTHC on November 14, 2016. Docket 1 at 2, ¶ 2.1. However, the Complaint also suggests that her employment began sometime before November 11, 2016. *See* Docket 1 at 3, ¶ 2.2.

[4] Docket 1-1 at 3, ¶ 2.2.

[5] Docket 1-1 at 3, ¶ 2.2.

[6] Docket 1-1 at 3, ¶¶ 2.3–2.6; *see also* Docket 1-1 at 6, ¶ 3.2.

[7] Docket 1-1 at 3, ¶¶ 2.3–2.4.

[8] Docket 1-1 at 3, ¶ 2.5.

[9] Docket 1-1 at 3, ¶ 2.6.

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 2 of 16

either quit or meet with Mr. Bevercomb, "presumably to be fired."[10]   On Monday, December 12, Ms. Barron spoke with Mr. Bevercomb, who denied telling Mr. Malbalay to speak with her.[11]   Mr. Bevercomb acknowledged that Mr. Malbalay should not be asking questions about her race, but stated that it was "within Mr. Malbalay's authority to ask her questions" and that Mr. Malbalay was "just uninformed about Alaskan Native culture."[12]   Mr. Bevercomb told Ms. Barron that she should continue to work with Mr. Malbalay in spite of the incident, and Ms. Barron initially agreed to do so.[13]   Later that day, however, Ms. Barron alleges there was a "noticeable change in [Mr.] Malbalay's demeanor towards" Ms. Barron, from which she inferred that Mr. Bevercomb had spoken with Ms. Malbalay about the incident.[14]   Because of Mr. Malbalay's "cold" and "unfriendly" behavior toward her, Ms. Barron requested that Mr. Malbalay no longer orient her.[15]

Ms. Barron spent the remainder of her orientation working with other co-workers, who "stated that she was doing an excellent job."[16]   During the orientation, however, Mr. Malbalay "made comments stating that [Ms. Barron] was not working hard."[17]   In January 2017, Ms. Barron discovered that her child had died in utero; she was forced to deliver her stillborn child by C-section.[18]   Mr. Bevercomb "did not provide support in [Ms.

---

[10] Docket 1-1 at 3, ¶ 2.6.

[11] Docket 1-1 at 4, ¶ 2.8.

[12] Docket 1-1 at 4, ¶ 2.8.

[13] Docket 1-1 at 4, ¶ 2.9.

[14] Docket 1-1 at 4, ¶ 2.10.

[15] Docket 1-1 at 4, ¶ 2.10.

[16] Docket 1-1 at 5, ¶ 2.11.

[17] Docket 1-1 at 5, ¶ 2.11.

[18] Docket 1-1 at 5, ¶ 2.12.

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 3 of 16

Barron's] request for leave" following this incident.[19]  Ms. Barron was ultimately allowed to take some leave time after she appealed to Mr. Bevercomb's supervisors.[20]

On February 13, 2017, Mr. Malbalay "showed his animosity toward Alaska Natives and their culture" by "mak[ing] a rude, disgusted, facial expression after a co-worker thanked [Ms. Barron] for a jar of fish that she had given her."[21]  Ms. Barron contacted ANTHC's Human Resources concerning this incident, but no action was taken.[22]

Sometime after the February 13 incident, Mr. Malbalay received a promotion.[23] Shortly thereafter, Mr. Malbalay wrote an email to hospital administrators "attacking [Ms. Barron] professionally."[24]  Ms. Barron was required to respond to Mr. Malbalay's allegations.[25]  On May 4, 2017, Ms. Barron "was required to report to the HR department, and answer questions about her work skills."[26]  She began to experience medical problems caused by work-related stress.[27]

"Based on the harassment that she was experiencing at work," Ms. Barron filed with the Anchorage Equal Rights Commission.[28]  However, ANTHC did not respond to

---

[19] Docket 1-1 at 5, ¶ 2.13.

[20] Docket 1-1 at 5, ¶ 2.13.

[21] Docket 1-1 at 5, ¶ 2.14.

[22] Docket 1-1 at 5, ¶ 2.14.

[23] Docket 1-1 at 5, ¶ 2.15.

[24] Docket 1-1 at 5, ¶ 2.16.

[25] Docket 1-1 at 5, ¶ 2.16.

[26] Docket 1-1 at 6, ¶ 2.17.

[27] Docket 1-1 at 6, ¶ 2.17.

[28] Docket 1-1 at 6, ¶ 2.18.

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 4 of 16

the commission.[29]  Ms. Barron also contacted ANTHC's Human Resources, but her concerns were not resolved.[30]  Because ANTHC "would not provide a resolution to [Ms. Barron's] complaints of racial discrimination, she felt she had no option [but] to quit the hostile working environment that had become unbearably stress-filled."[31]  Ms. Barron's employment ended on August 20, 2017.[32]

On February 26, 2018, Ms. Barron filed a Complaint in the Superior Court for the State of Alaska, Third Judicial District at Anchorage.[33]  On May 21, 2018, ANTHC removed the case to this Court pursuant to 28 U.S.C. § 1441.[34]  Ms. Barron brings a claim against ANTHC for disparate treatment and retaliation on the basis of race in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.[35]

On June 19, 2018, ANTHC filed the instant Motion to Dismiss.[36]

## LEGAL STANDARD

### I.  Jurisdiction and Applicable Law

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action with a claim alleged under federal law, 42 U.S.C. § 1981.   ANTHC is also a federal contractor and as such the Court has jurisdiction pursuant to 28 U.S.C. § 1442(a).

---

[29] Docket 1-1 at 6, ¶ 2.18.

[30] Docket 1-1 at 6, ¶ 2.18.

[31] Docket 1-1 at 6, ¶ 2.19.

[32] Docket 1-1 at 6, ¶ 2.20.

[33] Docket 1-1 at 1.

[34] Docket 1 (Notice of Removal) at 1, 5.

[35] Docket 1-1 at 6–7, ¶¶ 3.1–3.8.

[36] Docket 9 at 2.

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 5 of 16

## II. Standard for Dismissal

A defendant may seek dismissal of an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). When such a motion is made, the plaintiff has the burden of proving jurisdiction.[37] If the defendant raises a factual challenge to a court's jurisdiction, as opposed to a facial challenge based solely on the allegations in the complaint, a court may consider matters outside the pleadings in ruling on the motion.[38] Here, ANTHC submitted additional materials with its motion to dismiss.[39] "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."[40]

The issue of tribal sovereign immunity is "quasi jurisdictional" in the sense that it "may be asserted at any time."[41] "Although sovereign immunity is only quasi-jurisdictional in nature, Rule 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit."[42] "In the context of a Rule 12(b)(1) motion to dismiss on the basis of tribal sovereign

---

[37] *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

[38] *See Roberts v. Corrothers*, 812 F.2d 1173, 1177–78 (9th Cir. 1987); *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

[39] See Docket 10-1 (Paul Sherry article); Docket 10-2 (Barnes v. Bristol Bay Health Corp. order); Docket 10-3 (Beversdorf v. Tanana Chiefs Conference, Inc. order); Docket 10-4 (Bekkum v. Samuel Simmons Memorial Hosp et al. order); Docket 10-5 (Bylaws of the Arctic Slope Native Ass'n, Ltd.); Docket 10-6 (ANTHC Resolution 98-05); Docket 11 (Roald Helgesen Aff.); Docket 11-1 (Amended and Restated Bylaws of the ANTHC); Docket 11-2 (Alaska Tribal Health Compact); Docket 11-3 (Arriola v. Thompson decision); Docket 11-4 (Vartanian v. ANTHC closure).

[40] *Kingman Reef*, 541 F.3d at 1195 (quoting *Corrothers*, 812 F.2d at 1177).

[41] *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (quoting *Mitchell v. Franchise Tax Board (In re Mitchell)*, 209 F.3d 1111, 1117 (9th Cir. 2000), *abrogated on other grounds as recognized by Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 853 n.6 (9th Cir. 2001)).

[42] *Pistor*, 791 F.3d at 1111.

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 6 of 16

immunity, 'the party asserting subject matter jurisdiction has the burden of proving its existence,' i.e. that immunity does not bar the suit."[43]   A court may "'hear evidence regarding jurisdiction' and 'resolv[e] factual disputes where necessary'" when determining such a motion.[44]

## DISCUSSION

ANTHC advances three arguments in support of its motion to dismiss.  First, it contends that 42 U.S.C. § 1981 does not apply to ANTHC.  Second, it contends that tribal sovereign immunity protects ANTHC from suit.  Third, it contends that Ms. Barron's claims amount to tort claims, which may only be brought pursuant to the Federal Tort Claims Act ("FTCA").[45]   Given the Court's finding that tribal sovereign immunity applies, the Court does not address the remaining arguments.

### 1. Tribal sovereign immunity protects ANTHC from suit.

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers."[46]   This tribal immunity extends to tribal governing bodies and to tribal agencies or entities which act as an "arm of the tribe."[47]   Tribal sovereign immunity may extend to an organization created by more than one tribe.[48]

---

[43] *Id.* (quoting *Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2013)).

[44] *Id.* (alteration in original) (quoting *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009)).

[45] Docket 10 at 1–2.

[46] *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)).

[47] *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008).

[48] *See, e.g.*, *White v. Univ. of California*, 765 F.3d 1010, 1018 (9th Cir. 2014); *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 685 (8th Cir. 2011).

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 7 of 16

ANTHC is a statewide Alaska Native tribal health consortium.[49] It was established pursuant to Section 325 of Public Law 105-83 with the purpose of "entering into self-determination and self-governance agreements with the Indian Health Service [("IHS")] to operate and manage health services" for the benefit of Alaska Native tribes.[50] It is also a Co-Signer of the Alaska Tribal Health Compact ("ATHC"), which authorizes tribes and tribal health organizations to operate health and health-related programs.[51] ANTHC has funding agreements with the IHS, and provides "a wide range of medical health, community health and other services" for Alaska Natives that were formerly provided by the IHS's Alaska Office.[52] ANTHC is controlled by a 15-member Board of Directors comprised of Alaska Native representatives.[53] Twelve directors are selected by the twelve regional Alaska Native tribal health consortia, which are "comprised of, and controlled by, the federally-recognized Alaska Native tribes from their respective regions."[54] One director is appointed by the Metlakatla Indian Community, a federally recognized Alaska Native tribe.[55] The final two directors are elected by Alaska Native tribes that are not affiliated with a regional health consortium.[56]

The Ninth Circuit has considered whether a particular entity constitutes an "arm of

---

[49] Docket 11 at 2, ¶ 3.

[50] Docket 10-6.

[51] Docket 11-2 at 7.

[52] Docket 11 at 2–3, ¶¶ 4–5.

[53] Docket 11 at 4, ¶ 8.

[54] Docket 11 at 4, ¶ 10; *see* Docket 11-1 at 2–3; *see also Montella v. Chugachmiut*, 283 F. Supp. 3d 774, 778 (D. Alaska 2017) (describing one of ANTHC's constituent inter-tribal consortia as "a consortium organization controlled by its member tribes and operated to benefit those tribes.").

[55] Docket 11 at 4, ¶ 8; *see* Docket 11-1 at 2–3.

[56] Docket 11-1 at 3.

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 8 of 16

a tribe" that is entitled to tribal sovereign immunity on several occasions. In *Allen v. Gold Country Casino*, the Ninth Circuit considered whether a casino that was owned and operated by the federally recognized Tyme Maidu Tribe was entitled to tribal sovereign immunity.[57] The Circuit Court noted that the Casino's creation "was dependent upon [tribal and state] government approval" as required pursuant to the Indian Gaming Regulatory Act ("IGRA").[58] It further noted that one of the purposes of IGRA is to ensure "that the Indian tribe is the primary beneficiary of the gaming operation," and that the interstate gaming compact that created the casino provided that it would "enable the Tribe to develop self-sufficiency, promote tribal economic development, and generate jobs and revenues to support the Tribe's government and governmental services and programs."[59] In light of "the purposes for which the Tribe founded this Casino and the Tribe's ownership and control of its operations," the Circuit Court concluded that the casino "functions as an arm of the Tribe . . . [and] accordingly enjoys the Tribe's immunity from suit."[60]

In conducting its analysis of sovereign immunity, the *Allen* court relied in part on *Marceau v. Blackfeet Housing Authority*.[61] In *Marceau*, the Ninth Circuit considered whether the Blackfeet Housing Authority ("BHA") was entitled to sovereign immunity. The BHA was established by the Blackfeet Tribe as required by Housing and Urban

---

[57] *Allen v. Gold Country Casino*, 464 F.3d 1044, 1045–47 (9th Cir. 2006).

[58] *Id.* at 1046 (9th Cir. 2006); *see* 25 U.S.C. § 2710(d)(1).

[59] *Allen*, 464 F.3d at 1046–47 (quoting 25 U.S.C. § 2702(2)).

[60] *Id.* at 1047.

[61] 455 F.3d 974, 978 (9th Cir. 2006), *opinion reinstated in part, superseded in part on other grounds*, 540 F.3d 916 (9th Cir. 2008).

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 9 of 16

Development ("HUD") regulations.[62]   The BHA's enabling ordinance charged it with "[a]lleviating the acute shortage of decent, safe and sanitary dwellings for persons of low income" and "[r]emedying unsafe and [u]nsanitary housing conditions that are injurious to the public health, safety and morals."[63]   HUD granted the BHA authorization and funding that was used to build homes.[64]   Noting that tribal sovereign immunity "extends to agencies and subdivisions of the tribe," the Circuit Court concluded that "the Blackfeet Tribe's sovereign immunity extends to the Blackfeet Housing Authority."[65]

More recently, in *White v. University of California*, the Ninth Circuit identified five factors that courts should consider when determining whether an entity is entitled to tribal sovereign immunity: "(1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities."[66] In *White*, the Circuit Court considered whether the Kumeyaay Cultural Repatriation Committee ("KCRC") constituted an "arm" of the member tribes of the Kumeyaay Nation.[67]   The KCRC was formed pursuant to resolutions by the twelve Kumeyaay Nation members tribes to address "concerns over the repatriation efforts, or lack thereof, under

---

[62] *Id.* at 977 (9th Cir. 2006) (citing 24 C.F.R. § 805.109(c) (1979)).

[63] *Marceau*, 455 F.3d at 977 (quoting Blackfeet Tribal Ordinance No. 7, art. II, §§ 1–2 (Jan. 4, 1977)).

[64] *Id.*

[65] *Id.* at 978.

[66] *White v. Univ. of California*, 765 F.3d 1010, 1025 (9th Cir. 2014) (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010)).

[67] *Id.*

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 10 of 16

[the Native American Graves and Repatriation Act ("NAGPRA")] in San Diego."[68]

Applying the five factors described above, the Circuit Court concluded that the KCRC was an "arm of the tribe" that was entitled to sovereign immunity:

> [T]he Repatriation Committee was created by resolution of each of the Tribes, with its power derived directly from the Tribes' sovereign authority. The Repatriation Committee is comprised solely of tribal members, who act on its behalf. KCRC tribal representatives are appointed by each tribe. The process by which the Repatriation Committee designates the particular tribe to receive remains under NAGPRA is defined and accepted by the Tribes. The Repatriation Committee is funded exclusively by the Tribes. As the district court noted, the whole purpose of the Repatriation Committee, to recover remains and educate the public, is "core to the notion of sovereignty." Indeed, "preservation of tribal cultural autonomy [and] preservation of tribal self-determination," are some of the central policies underlying the doctrine of tribal sovereign immunity. Given these undisputed facts, the district court properly concluded that the Repatriation Committee was an "arm of the tribe" for sovereign immunity purposes . . . .[69]

These cases suggest that ANTHC is an arm of Alaska's tribes that is entitled to sovereign immunity. Like the casino examined in *Allen*, ANTHC's creation was authorized pursuant to a federal law intended to promote tribal self-sufficiency.[70] And like the BHA, ANTHC receives federal funding to conduct activities that benefit tribe members. The factors identified in *White* also indicate that ANTHC is entitled to sovereign immunity. ANTHC was formed by Alaska Native tribes. By "entering into self-determination and self-governance agreements" with the IHS, ANTHC provides and manages health services that benefit members of Alaska Native tribes. The structure of ANTHC's board places control over the ANTHC's ownership and management in representatives of the

---

[68] *Id.* at 1018; *see* 25 U.S.C. § 3001 *et seq.*

[69] *Id.* at 1025 (citation omitted).

[70] *See* 25 U.S.C. § 2702(1); 25 U.S.C. § 5301(a).

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 11 of 16

Alaska Native tribes. Like the KCRC, ANTHC's purpose — entering into "self-determination and self-governance agreements" — is "core to the notion of sovereignty." Finally, ANTHC receives federal funding to carry out governmental functions critical to Alaska Native tribes.

In her opposition, Ms. Barron contends that the Fourth Circuit has rejected the contention "that Alaska Native Corporations have sovereign immunity such as to avoid § 1981 claims."[71] The case she cites for this proposition is distinguishable, however. In *Aleman v. Chugach Support Services, Inc.*, the Fourth Circuit concluded that Chugach Support Services, Inc. ("Chugach") was not entitled to sovereign immunity.[72] Unlike ANTHC, the entity examined in *Aleman* was a for-profit Alaska Native Corporation created pursuant to the Alaska Native Claims Settlement Act ("ANCSA").[73] While Alaska Native Corporations are owned and managed by Alaska Natives, they are distinct legal entities from Alaska Native tribes.[74] As the *Aleman* court recognized, the question whether sovereign immunity shields a tribe from liability is distinct from the question whether "ownership of . . . corporations by Alaska Natives and their devisees, or any other attribute, entitles [those corporations] to immunity from suits."[75] Unlike an Alaska Native

---

[71] Docket 12 at 13.

[72] *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 213 (4th Cir. 2007).

[73] *Id.*

[74] *See State of Alaska ex rel. Yukon Flats Sch. Dist. v. Native Vill. of Venetie Tribal Gov't*, 101 F.3d 1286, 1295 (9th Cir. 1996), *rev'd sub nom. on other grounds*, *Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520 (1998); *Native Vill. of Stevens v. Alaska Mgmt. & Planning*, 757 P.2d 32, 41 (Alaska 1988) (stating that ANCSA corporations "are to be treated as any other Alaska corporations, with temporary exceptions as to the alienability of stock.").

[75] *Aleman*, 485 F.3d at 213; *see also John v. Baker*, 982 P.2d 738, 753 (Alaska 1999) (concluding that Congress did not intend ANCSA to "handicap tribes by divesting them of their sovereign powers").

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 12 of 16

Corporation, ANTHC is an entity created and controlled by Alaska Native tribes that promotes tribal self-determination and fulfills governmental functions. Accordingly, it constitutes an arm of the Alaska Native tribes that is entitled to sovereign immunity.

### 2. ANTHC's tribal sovereign immunity is a bar to § 1981 liability.

Suits against Indian tribes and entities that constitute an "arm of a tribe" are barred by sovereign immunity, "absent a clear waiver . . . or congressional abrogation."[76] "There is a strong presumption against waiver of tribal sovereign immunity."[77] Waiver of sovereign immunity may not be implied and must be expressed unequivocally.[78] Similarly, congressional abrogation of sovereign immunity may not be implied and must be "unequivocally expressed" in "explicit legislation."[79]

Here, Ms. Barron's suit alleges disparate treatment and retaliation on the basis of race in violation of 42 U.S.C. § 1981. There is no indication that ANTHC has waived its immunity for such a claim. Accordingly, the Court must determine whether Congress has abrogated tribal sovereign immunity as to § 1981 claims. While the Ninth Circuit has not addressed this question, other circuits have concluded that tribal sovereign immunity is a bar to § 1981 liability. In *Yashenko v. Harrah's NC Casino Co., LLC*, the Fourth Circuit concluded without elaboration that the Eastern band of Cherokee Indians enjoyed sovereign immunity from a § 1981 suit.[80] In *Aleman*, the Fourth Circuit reaffirmed that it

---

[76] *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991).

[77] *Demontiney v. United States*, 255 F.3d 801, 811 (9th Cir. 2001).

[78] *See Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996).

[79] *White v. Univ. of Cal.*, 765 F.3d 1010, 1023–24 (9th Cir. 2014) (quoting *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1056 (9th Cir. 2003)).

[80] 446 F.3d 541, 552 (4th Cir. 2006).

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 13 of 16

had "recognized Indian tribal immunity as a bar to Section 1981 liability."[81]  Similarly, in *Taylor v. Alabama Intertribal Council Title IV J.T.P.A.*, the Eleventh Circuit concluded that "nothing in § 1981 supports the proposition that Congress intended to abrogate tribes' immunity and permit private parties to bring employment discrimination claims against them for intramural tribal employment decisions."[82]

Ninth Circuit cases addressing statutory abrogation of tribal sovereign immunity provide additional guidance.  In *White*, the Circuit Court held that NAGPRA did not abrogate tribal sovereign immunity, even though its enforcement clause grants district courts "jurisdiction over any action brought by any person alleging a violation of [NAGPRA]."[83]  The Circuit Court noted that the clause "does not contain any language expressly abrogating tribal sovereign immunity."[84]  In reaching this conclusion, the *White* court relied in part on *Santa Clara Pueblo v. Martinez*, in which the Supreme Court indicated that a statutory provision conferring on federal courts "jurisdiction of any civil action authorized by law to be commenced by any person" did not abrogate tribal sovereign immunity with respect to a suit to secure enforcement of Title I the Indian Civil Rights Act.[85]  Similarly, in *Miller v. Wright*, the Ninth Circuit concluded that tribal immunity was not abrogated by federal antitrust laws that referred to states, foreign nations, and

---

[81] 485 F.3d 206, 213 (4th Cir. 2007) (citing *Yashenko*, 446 F.3d at 551–53).

[82] 261 F.3d 1032, 1036 (11th Cir. 2001).  The Eleventh Circuit concluded only that sovereign immunity barred claims related to "intramural" tribal decisions — that is, matters touching on an Indian tribe's exclusive rights of self-government.  It did not address whether sovereign immunity would bar *all* § 1981 claims.

[83] 765 F.3d 1010, 1024 (9th Cir. 2014); *see* 25 U.S.C. § 3013.

[84] *White*, 765 F.3d at 1024.

[85] *Id.* (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 53 & n.4, 59 (1978)).

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 14 of 16

"corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country."[86]  In contrast, in *Krystal v. Navajo Nation*, the Ninth Circuit held that the Bankruptcy Code abrogated tribal sovereign immunity with respect to an adversary action under the Code.[87]  The Circuit Court noted that 11 U.S.C. § 106(a) expressly abrogated the sovereignty of all "governmental units," and that a separate provision defining "governmental units" established that all "foreign or domestic governments" are considered governmental units for the purpose of the Bankruptcy Code.[88]

These cases suggest that Congress has not abrogated tribes' sovereign immunity from § 1981 liability.  Unlike the Bankruptcy Code, § 1981 does not include language clearly expressing an intent to abrogate the sovereign immunity of all governmental units, including Indian tribes.  Rather, the statute's articulation of rights applicable to "[a]ll persons within the jurisdiction of the United States" is similar to the statutory language examined in *White* and *Martinez*.[89]  Therefore, Congress has not "unequivocally

---

[86] 705 F.3d 919, 926 (9th Cir. 2013); *see* 15 U.S.C. § 1; 15 U.S.C. § 12.

[87] *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1060 (9th Cir. 2004), *as amended on denial of reh'g* (Apr. 6, 2004); *see* 11 U.S.C. §§ 505, 542.

[88] *Krystal Energy Co.*, 357 F.3d at 1057; *see* 11 U.S.C. § 101(27).

[89] 42 U.S.C. § 1981 reads:

> (a) Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 15 of 16

expressed" an intent to abrogate tribal sovereign immunity in "explicit legislation." Because ANTHC is entitled to sovereign immunity, and because immunity from § 1981 claims has not been waived by the tribe or abrogated by Congress, ANTHC is immune from suit.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that ANTHC's Motion to Dismiss at Docket 9 is GRANTED. The Clerk of Court is directed to enter a final judgment.

DATED this 2nd day of January, 2019 at Anchorage, Alaska.

*s/Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Case No. 3:18-cv-00118-SLG, *Barron v. Alaska Native Tribal Health Consortium, Inc.*
Order re Motion to Dismiss
Page 16 of 16